**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**ROANOKE DIVISION**

| | | |
|---|---|---|
| COREY DEANDRE HOOD, | ) | |
| Plaintiff, | ) | Case No. 7:20-cv-00402 |
| | ) | |
| v. | ) | |
| | ) | By: Hon. Michael F. Urbanski |
| BUREAU OF PRISONS, et al., | ) | Chief United States District Judge |
| Defendants. | ) | |

<u>**MEMORANDUM OPINION**</u>

Corey DeAndre Hood, a federal inmate proceeding <u>pro se</u>, filed this civil action against the Federal Bureau of Prisons ("BOP") and twenty-three individuals employed at United States Penitentiary ("USP") Lee. The defendants construed the complaint as attempting to assert claims under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b)(1), 2671–2680, and <u>Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics</u>, 403 U.S. 388 (1971), and Hood does not dispute that construction. The case is presently before the court on (1) the defendants' motions to dismiss and/or for summary judgment, ECF Nos. 26, 33, and 99;[1] and (2) Hood's motion to amend his complaint to include additional claims and defendants, ECF No. 43. The motions have been fully briefed and are ripe for disposition. For the reasons set forth below, the defendants' motions are **GRANTED**, and Hood's motion is **DENIED**.

---

[1] The case has three sets of defendants, all of whom are represented by the United States Attorney. The first motion, ECF No. 26, was filed by the United States, Lieutenant Bellamy, R&D Officer White, Officer Wright, Officer Owens, Officer Sloan, Lieutenant Parsons, Lieutenant LaFave, Lieutenant Lively, Nurse Parker, Nurse Caudill, Disciplinary Hearing Officer Brown, Officer Holbrook, and Officer Mitchell. The second motion, ECF No. 33, was filed by Officer S. White, Officer Mullins, Associate Warden Leu, Warden Breckon, and Associate Warden Henger. The third motion, ECF No. 99, was filed by Nurse Bowman, Nurse Pease, Psychologist Bailey, Officer Hamilton, and Officer Gilbert.

## BACKGROUND

### I.   Hood's Verified Complaint

At the time this action was filed, Hood was incarcerated at USP Terre Haute in Terre Haute, Indiana. Compl., ECF No. 1, at ¶ A. He was previously incarcerated at USP Lee in Pennington Gap, Virginia, which is located in this judicial district. Id. ¶ B. His claims are based on events that allegedly occurred at USP Lee in 2019, after he was transferred from another federal prison. The following factual summary is taken from his verified complaint.

### A.   Uses of Force in March 2019

Hood first claims that he was "beaten by several officers" upon arriving at USP Lee on March 12, 2019. Compl. ¶ 1. He alleges that Officers Sloan, Owens, Wright, Mullins, Hamilton, and Gilbert punched him in the head and body while other officers held his arms. Id.; see also Pl.'s M. Substitute, ECF No. 51, at ¶ 4 (identifying Hamilton and Gilbert as the unidentified officers referenced in paragraph 1 of the complaint). He also alleges that the officers slammed him on the ground three times and that Lieutenant Bellamy was "present the entire time." Compl. ¶ 1.

Hood next asserts that Receiving and Discharge ("R&D") Officer White threatened to sexually assault him with a knife while cutting off his clothes in a room adjacent to R&D. Id. ¶ 2. White then placed Hood in handcuffs and purportedly "tightened them to the last click, cutting off blood circulation to [Hood's] hands." Id. ¶ 4. Hood alleges that White also "put the belly chain on [him] so tight [that the] chain cut into [his] skin and [he] could barely breathe." Id. Hood claims that he still has a scar around his torso from the belly chain. Id.

Hood was subsequently placed in an observation cell in the Special Housing Unit ("SHU"). Id. ¶ 6. Once he arrived there, Lieutenant Bellamy instructed him to get on his knees for a restraint check. Id. Hood alleges that Officer Sloan then "began smashing [his] face against the wall and stabbing [his] calves and Achilles tendon with a shield as [he] faced the wall on [his] knees." Id.

Approximately two hours later, according to Hood, Lieutenant Bellamy told him that he "was going on camera and that if [he] said anything the footage would be deleted" and he would be "beaten again." Id. ¶ 7. Hood was taken to the nursing station where Nurse Parker was waiting. Id. ¶ 8. Hood alleges that Parker ignored evidence indicating that the belly chain and restraints were applied too tightly, including the fact that the chain "cut into [his] skin and restricted [his] airflow." Id.

Hood alleges that he was subsequently "taken back to the observation cell where Officer Sloan continued to smash [his] head into the wall and smash [his] calves with a shield at Lt. Bellamy's command." Id. ¶ 9. Hood asserts that Bellamy started asking him "trivial questions" and that he was subjected to "more torture" whenever he answered them. Id.

Later that day, Nurse Caudill appeared at the cell for a restraint check. Id. ¶ 10. Hood alleges that Caudill "willfully ignored the fact that the restraint[s] were cutting off [his] blood circulating to [his] hands and that the belly chain was much to[o] tight." Id. Caudill eventually told the officers to loosen the restraints after Hood's hands purportedly became so swollen that they "looked like boxing gloves." Id. A few hours later, officers "tightened them back to the last click." Id.

Hood alleges that Lieutenant Lively visited the observation cell during his shift and "ordered his officers to smash [Hood's] face into the wall with the shield." Id. ¶ 11. Hood further alleges that Lively refused to remove the restraints and that he "couldn't use the restroom properly" because they were so tight. Id. ¶¶ 11, 12.

The following morning, Lieutenant Parsons permitted Hood to be taken out of the restraints. Id. ¶ 13. Before the restraints were removed, Hood was "force-fed a foul-smelling sandwich and forced to drink toilet water out of a bag." Id. Hood alleges that Officer Sloan referred to him using a racial epithet while forcing him to drink the water. Id.

Hood further alleges that Warden Breckon ignored his complaints of "torture" during rounds. Id. ¶ 35. Hood also states that he believes that Warden Breckon "was present when [Hood] was jumped by the officers [upon arriving at USP Lee] because Officer White pushed his duress button right after [Hood] got off the bus." Id.

### B.    Uses of Force in June 2019

Hood claims that he was placed in "painful restraints" again on June 18, 2019, even though he was "not violent at all." Id. ¶ 17. The restraints remained in place for over twenty hours. Id. During that time, Hood was purportedly "ruffed up" during restraint checks by Lieutenant Parsons. Id. Hood also alleges that Lieutenant LaFave directed other officers to assault him while he was in restraints and that Officer Mitchell "played a key role in the sadism." Id. ¶¶ 30–31. Hood further alleges that Nurse Bowman and Nurse Pease performed "bogus restraint checks." Id. ¶ 17; see also Pl.'s M. Substitute ¶¶ 1, 3 (identifying Bowman and Pease as the unknown nurses referenced in the complaint).

4

### C.      Other Incidents and Complaints

Hood's verified complaint also challenges other aspects of his conditions of confinement at USP Lee. He alleges that he was denied food, bedding, and a mattress while housed in the observation cell on March 12, 2019. Compl. ¶ 12. He alleges that Officer S. White denied him hygiene products and clean clothing, stole his stamps and commissary items, and destroyed his copy of the Qur'an. Id. ¶ 16. Hood also alleges that he was "never offered or allowed recreation" at USP Lee, that none of the cells in his housing unit had mattresses, and that Officer Holbrook took his blanket and refused to return it. Id. ¶¶ 18–19. Hood further alleges that he and other Muslim inmates did not receive enough time to eat meals during Ramadan; that he was housed in a cell with no working shower or ventilation; that he was not allowed to possess books while in the SHU; that he was housed with a mentally ill inmate for forty-five days who urinated and defecated on himself; and that Officer Gilbert, Officer Mullins, and Lieutenant Lively "turned a blind eye to what was happening." Id. ¶¶ 22–27. Additionally, Hood alleges that Psychologist Bailey ignored his allegations of sexual assault and attempted to intimidate him during a meeting on June 20, 2019. Id. ¶¶ 32–33; see also Pl.'s M. Substitute ¶ 2 (identifying Bailey as the unknown psychologist referenced in the complaint).

### D.      Efforts to Exhaust Administrative Remedies

On the first page of his complaint, Hood alleges that he "completed the BP-9, 10 [and] 11" prior to filing the instant action. Compl. ¶ D. He then alleges that Disciplinary Hearing Officer Brown "effectively blocked [his] efforts to appeal or grieve these issues at the time [of the events in question]" and that his "Unit team refused to give [him] a formal grievance form." Id. ¶ 15. Hood further alleges that Associate Warden Henger "refused to accept a

5

sensitive handwritten cop-out from [him]" and that Associate Warden Lue told him to file a written complaint about the alleged beatings despite knowing that Hood "had no access to a form or a pen for that matter." Id. ¶¶ 32, 34.

## II.    Defendants' Motions

The defendants have filed motions to dismiss and/or for summary judgment. They collectively make several arguments, including the following: (1) that any claims under the FTCA must be dismissed for failure to file an administrative claim for damages with the BOP; (2) that most of Hood's constitutional claims under Bivens are subject to dismissal for failure to exhaust administrative remedies; and (3) that a Bivens remedy is unavailable for Hood's particular claims under the Eighth Amendment.[2]

To support their administrative exhaustion arguments, the defendants submitted a declaration executed by Destiny Spearen, a paralegal who has access to the BOP's SENTRY system that tracks inmates' administrative filings. Spearen Decl., ECF No. 27-2, at ¶ 2. According to the declaration, Hood "has not filed or attempted to file any administrative tort claims relating to his claims in this case." Id. ¶ 5.

Exhibits attached to Spearen's declaration reflect that Hood filed a Request for Administrative Remedy ("BP-9") on November 20, 2019, after he had been transferred to USP Terre Haute. The formal grievance complained about events that allegedly occurred after Hood arrived at USP Lee:

> Upon arrival at USP Lee—03/12/2019 @ 9:45 am—I was taken
> to a room where I was stripped naked and beaten by several

---

[2] The most recent motion filed by the third set of defendants incorporates some of the arguments made in the earlier motions. Similarly, the other defendants have moved to supplement their motions to include additional arguments made by the third set of the defendants. That motion, ECF No. 101, will be granted.

officers. Two officers held my arms while four officers punched me in my head and body simultaneously. I was body slammed and kicked as well. Lt. Bellamy and Officers White, Owens, Wright, Sloan and others put me in very painful restraints that left me with permanent scars around my torso and numbness in hands for several months. Lt. Bellamy told me that if I said anything on camera, I will be beaten gain. Nurses Parker and Caudill performed phony restraint checks and watched as the officers tortured me. I stayed in restraints for 24 hours while being tortured during "restraint checks." Before I was taken out of restraints I was force-fed a foul-smelling sandwich and forced to drink toilet water out of plastic. Officer Sloan told me I had to suck on the bag like a good nigger. Officer White threatened to stick the sharp object he used to cut my clothing off up my rectum. I want this matter referred to [the Office of the Inspector General ("OIG")].

Spearen Decl. Attach. B, ECF No. 27-2, at 11.[3] The Request for Administrative Remedy was assigned Case Number 98071-F1. Id. In response to the Request, the Complex Warden informed Hood that the mistreatment of inmates is not tolerated by the BOP and that his allegations of staff misconduct would be "thoroughly reviewed." Id. at 12.

On December 18, 2019, Hood filed a Regional Administrative Remedy Appeal ("BP-10") in which he reasserted the same allegations of abuse at USP Lee in March 2019. Spearen Decl. Attach. C, ECF No. 27-2, at 14. In response, the Regional Director informed Hood that allegations of staff misconduct are taken seriously and that his allegations had been forwarded to the appropriate authority for review. Id. at 16.

Hood subsequently filed a Central Office Administrative Appeal ("BP-11") in which he again complained of being abused by officers upon his arrival at USP Lee on March 12, 2019. Spearen Decl. Attach. D, ECF No. 27-2, at 18. In a response dated May 26, 2020, the

---

[3] Citations to the attachments refer to the CM/ECF page number at the top of each page.

National Inmate Appeals Administrator "concur[red] with the manner in which the Warden and Regional Director addressed [Hood's] concerns . . . ." Id. at 20. The response emphasized that Hood's allegations had been "forwarded to the appropriate Bureau component for further review" and that "any action taken against staff, if any are deemed necessary, [would] not be disclosed to [Hood]." Id. At that time, Hood's "Administrative Remedies regarding the March 12, 2019 allegations were exhausted." Spearen Decl. ¶ 13.

According to Spearen's declaration, Hood has not filed any other requests for administrative remedies relevant to this action. Id. ¶ 14. The declaration specifically states that Hood "has failed to file any administrative remedies regarding his allegations of poor conditions in SHU or regarding his placement in restraints on June 18, 2019." Id.

## III.   Hood's Motion to Amend

Hood has moved to amend his complaint to include additional claims arising from events that allegedly occurred at USP Lee. The proposed claims are as follow: (1) that the BOP "has a policy of putting inmates in hard metal restraints" and that the use of such restraints "serves no penological purpose"; (2) that the BOP allows its employees and institutions to utilize symbols of racism; (3) that the BOP "tolerates incompetence of its poorly trained officers"; (4) that Captain Short failed to protect him from abuse; (5) that SIS Sexton failed to protect him from harm and prevented him from filing grievances at USP Lee; (6) that BOP employees, including SIA Canfield, ignored complaints related to prison conditions and abuse; and (7) that he lost twenty pounds as a result of the "disgusting" food that is served to inmates in the SHU. Pl.'s Mot. Am., ECF No. 43, at 1.

### STANDARDS OF REVIEW

The defendants' motions are filed pursuant to Rules 12(b)(1), 12(b)(6), and 56 of the Federal Rules of Civil Procedure. Under Rule 12(b)(1), defendants may seek dismissal for lack of subject matter jurisdiction. "Generally, when a defendant challenges subject matter jurisdiction via a Rule 12(b)(1) motion to dismiss, the district court may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Velasco v. Gov't of Indonesia, 370 F.3d 392, 398 (4th Cir. 2004). "A Rule 12(b)(1) motion to dismiss should be granted only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Balfour Beatty Infrastructure, Inc. v. Mayor of Balt., 855 F.3d 247, 251 (4th Cir. 2017) (internal quotation marks and citation omitted).

Under Rule 12(b)(6), a defendant may seek dismissal for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Because a Rule 12(b)(6) motion "tests the sufficiency of the complaint," the court's evaluation is "generally limited to a review of the allegations of the complaint itself," along with any documents that are attached to the complaint or "explicitly incorporated into the complaint by reference." Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 165–66 (4th Cir. 2016).

Under Rule 56 of the Federal Rules of Civil Procedure, the court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine question of material fact exists where, after reviewing the record as a whole, a court finds that a reasonable jury could return a verdict for the nonmoving party." J.D. ex rel. Doherty v. Colonial Williamsburg Found., 925 F.3d 663, 669 (4th Cir. 2019) (internal quotation marks and citation omitted). When ruling on a motion for summary judgment, the court must "view the facts and all justifiable inferences arising therefrom in the light most favorable to . . . the nonmoving party." Jacobs v. N.C. Admin. Office of the Courts, 780 F.3d 562, 565 n.1 (4th Cir. 2015) (quoting Libertarian Party of Va. v. Judd, 718 F.3d 308, 312 (4th Cir. 2013)). However, "the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." Dash v. Mayweather, 731 F.3d 303, 311 (4th Cir. 2013).

Rule 15 of the Federal Rules of Civil Procedure provides that a party may amend a pleading with the court's leave and that the court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Courts may deny leave to amend a pleading if the proposed amendments would be futile. Save Our Sound OBX, Inc. v. N.C. DOT, 914 F.3d 213, 228 (4th Cir. 2019). "A proposed amendment is futile when it is clearly insufficient or frivolous on its face . . . [or] if the claim it presents would not survive a motion to dismiss." Id. (internal quotation marks and citations omitted).

## DISCUSSION

## I.    Defendants' Motions to Dismiss and/or for Summary Judgment

The court will first address the dispositive motions filed by the defendants. They seek dismissal and/or summary judgment as to all of Hood's claims under the FTCA and Bivens.

### A.   Claims under the FTCA

"As a general matter, the United States is immune from suit unless it waives that immunity." Metzgar v. KBR, Inc., 744 F.3d 326, 341 (4th Cir. 2014). The FTCA, which authorizes certain tort claims against the United States, provides a "limited waiver of the government's sovereign immunity for injury or loss caused by the negligent or wrongful act or omission of government employees acting within the scope of their employment." Doe v. Meron, 929 F.3d 153, 161 (4th Cir. 2019); see also 28 U.S.C. § 1346(b)(1)). "This waiver permits suits only on terms and conditions strictly prescribed by Congress." Gould v. U.S. Dep't of Health & Human Servs., 905 F.2d 738, 741 (4th Cir. 1990).

Among other conditions, the FTCA "requires that a claim be 'presented' to the appropriate agency within two years after the claim accrues." Ahmed v. United States, 30 F.3d 514, 516 (4th Cir. 1994) (citing 28 U.S.C § 2401(b)). "The Act also requires that before an action may be commenced in court, the claimant must 'present' his claim to the appropriate agency for determination." Id. (citing 28 U.S.C. § 2675(a)). The United States Court of Appeals for the Fourth Circuit has recognized that "the requirement of filing an administrative claim is jurisdictional and may not be waived." Henderson v. United States, 785 F.2d 121, 123 (4th Cir. 1986).

The Fourth Circuit has also held that "[a]n administrative claim must be properly presented." Kokotis v. United States Postal Serv., 223 F.3d 275, 278 (4th Cir. 2000). A claim is properly presented when the appropriate federal agency "receives a completed SF 95 (or

other written notification of an incident), and 'a claim for money damages in a sum certain . . . .'" Id. (emphasis in original) (quoting 28 C.F.R. § 14.2(a)). The failure to request a sum certain "deprives a district court of jurisdiction over any subsequently filed FTCA suit." Id.; see also Ahmed, 30 F.3d at 518 (explaining that the plaintiffs' failure to allege a sum certain in their administrative claim meant "that they did not present the claim and consequently did not exhaust their administrative remedies" as required by the FTCA).

In this case, Hood has not alleged, much less demonstrated, that he satisfied the requirement of presenting an administrative claim for a sum certain to the proper agency. Although it is undisputed that Hood pursued administrative remedies regarding certain allegations, none of the forms submitted as exhibits contain a request for monetary damages in a sum certain. Because Hood has not alleged or shown that he properly exhausted his administrative remedies, the court lacks jurisdiction over any FTCA claims. Kokotis, 223 F.3d at 278. Accordingly, such claims are subject to dismissal under Rule 12(b)(1).

### B.    Claims under Bivens

The Supreme Court's decision in Bivens "recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights." Iqbal, 556 U.S. at 675 (quoting Correctional Services Crop. v. Malesko, 534 U.S. 61, 66 (2001)). "In that case and then in two subsequent cases, the Supreme Court allowed plaintiffs alleging certain Fourth, Fifth, and Eighth Amendment violations to proceed under this implied cause of action." Annappareddy v. Pascale, 996 F.3d 120, 133 (4th Cir. 2021) (citing Bivens, 403 U.S. at 396-97; Davis v. Passman, 442 U.S. 228, 248-49 (1979); Carlson v. Green, 446 U.S. 14, 17-19 (1980)). Since those cases were decided, however, the

Supreme Court has "narrowed the circumstances in which a plaintiff may successfully state a claim under the principles established in Bivens." Attkisson v. Holder, 925 F.3d 606, 620 (4th Cir. 2019) (citing Ziglar v. Abassi, 137 S. Ct. 1843, 1857–58 (2017)).

"In the limited settings where Bivens does apply, the implied cause of action is the federal analog to suits brought against state officials under . . . 42 U.S.C. § 1983." Iqbal, 556 U.S. at 675. "Federal prisoners suing under Bivens . . . must first exhaust inmate grievance procedures just as state prisoners must exhaust administrative processes prior to instituting a § 1983 suit." Porter v. Nussle, 534 U.S. 516, 524 (2002). Additionally, they must plead and ultimately prove "that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 676.

### 1.    Exhaustion of Administrative Remedies

To the extent Hood seeks relief under Bivens, the defendants first argue that Hood failed to exhaust his administrative remedies as to most of his claims. They correctly note that "exhaustion is mandatory" under the Prison Litigation Reform Act ("PLRA"), Jones v. Bock, 549 U.S. 199, 211 (2007), and that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong," Porter, 534 U.S. at 532. Moreover, "proper exhaustion" of administrative remedies is required, which includes "compliance with an agency's deadlines and other critical procedural rules." Woodford v. Ngo, 548 U.S. 81, 90, 93 (2006).

Because "failure to exhaust is an affirmative defense under the PLRA," prison officials bear the burden of establishing that an inmate failed to exhaust his administrative remedies.

Jones, 549 U.S. at 216; see also Woodhouse v. Duncan, 741 F. App'x 177, 178 (4th Cir. 2018).

"Once a defendant presents evidence of a failure to exhaust, the burden of proof shifts to the inmate to show, by a preponderance of the evidence, that exhaustion occurred or that administrative remedies were unavailable." Knutson v. Hamilton, No. 7:20-cv-00455, 2021 WL 388444, *4 (W.D. Va. Sept. 13, 2021) (citing Tuckel v. Grover, 660 F.3d 1249, 1254 (10th Cir. 2011); Graham v. Gentry, 413 F. App'x 660, 663 (4th Cir. 2011)).

"[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008). For instance, an administrative remedy may be unavailable when prison officials interfere with an inmate's efforts to pursue relief. Ross v. Blake, 578 U.S. 632, 643 (2016).

### a.      The BOP's Administrative Remedy Program

The BOP has a multi-tiered administrative remedy program that allows a federal inmate "to seek formal review of an issue relating to any aspect of his/her own confinement." 28 C.F.R. § 542.10(a). Pursuant to the applicable regulations, an inmate must first attempt to informally resolve an issue with prison staff. Id. § 542.13(a). If the grievance remains unresolved, the inmate may file a formal Request for Administrative Remedy ("BP-9") with the Warden. Id. § 542.14. If the inmate is unsatisfied with the Warden's Response, he may file a Regional Office Administrative Remedy Appeal ("BP-10") with the Regional Director. Id. § 542.15. If the inmate remains unsatisfied, he may appeal the Regional Director's response to the Office of General Counsel by filing a Central Office Administrate Appeal ("BP-11"). Id.

The ordinary deadline for filing a Request for Administrative Remedy is "20 calendar days following the date on which the basis for the Request occurred." Id. § 542.14(a). However, when an "inmate demonstrates a valid reason for delay, an extension in filing time may be allowed." Id. § 542.14(b). "In general, valid reason for delay means a situation which prevented the inmate from submitting the request within the established time frame." Id.

### b.      Hood's Failure to Exhaust

The defendants have presented evidence establishing that Hood only exhausted his administrative remedies as to his claims related to the use of force over the course of twenty-four hours beginning on March 12, 2019. Hood does not dispute that the BP-9 filed in November 2019 only complained of actions that were purportedly taken upon his arrival at USP Lee. Nor does he otherwise suggest that he fully exhausted his administrative remedies as to the other claims asserted in his complaint. Instead, Hood argues that he was "hindered from filing [grievances] while at USP Lee" and, thus, that administrative remedies were not "available" for the other claims. Pl.'s Resp., ECF No. 40, at 9; see also Pl.'s Resp., ECF No. 55, at 1 ("Administrative remedies were not available whatsoever while I was housed in the SHU."); Pl.'s Resp., ECF No. 104, at 3 ("As stated before I was prevented from filing any formal grievance.").

As previously noted, "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore, 517 F.3d at 725. Thus, if prison staff members refuse to provide access to grievance forms, it is typically "difficult to understand how the inmate has any available remedies." Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004). Courts have recognized, however, that

"temporary obstacles that prevent the submission of a timely grievance—such as a lockdown, a transfer, or a refusal by prison officials to provide the necessary forms—do not make administrative remedies unavailable where prisoners may 'request consideration of untimely grievances for good cause.'" Abram v. Leu, 848 F. App'x 868, 871 (11th Cir. 2021) (quoting Bryant v. Rich, 530 F.3d 1368, 1373 (11th Cir. 2008)).

As indicated above, "the BOP regulations . . . give prisoners the opportunity to request consideration of an untimely grievance for a 'valid reason,'" which is generally defined as "a situation which prevented the inmate from submitting the request within the established time frame." Id. (quoting 28 C.F.R. § 542.14(b)). An officer's "refusal to provide the forms necessary to initiate the grievance process appears to qualify as such a situation . . . ." Id. (internal quotation marks omitted); see also Toliver v. USP Lee, No. 7:19-cv-002123, 2020 WL 5027137, *4 (W.D. Va. Aug. 24, 2020) (noting that an inmate who is physically incapable of preparing a request or appeal for an extended period of time may request an extension under 28 C.F.R. § 542.14(b)).

Thus, while Hood, like the inmate in Abram, may have been prevented from filing grievances while he was incarcerated at USP Lee, the record reflects that he could have exhausted his administrative remedies by filing additional grievances after he was transferred to USP Terre Haute. See Abram, 848 F. App'x at 871; see also Toliver, 2020 WL 5027137, at *4 (emphasizing that a federal inmate "could have requested an extension of time in which to file the initial grievance if he were unable to do so at USP Lee or during the time he was being transferred to the other facilities"). Indeed, Hood admits that he was able to file a BP-9 after he was transferred from USP Lee, see Pl.'s Resp., ECF No. 55 at 2, and the defendants'

exhibits establish that he fully exhausted his administrative remedies related to the use of force in March 2019. There is no indication that anyone or anything prevented Hood from raising the other claims asserted in his complaint when he filed the BP-9 in November 2019, and "any claim that remedies were unavailable to [Hood after he was transferred] 'is belied' by the fact that he actually filed administrative remedies during the same time." Knutson, 2021 WL 388444, at *6 (citations omitted).

In sum, there is simply no evidence from which a reasonable factfinder could conclude that Hood exhausted his administrative remedies related to incidents that allegedly occurred after he was released from ambulatory restraints on March 13, 2019, or that the remedies he could have and should have pursued at USP Terre Haute were unavailable to him. Accordingly, any claims arising from actions that occurred after the initial use of ambulatory restrains are procedurally barred and the defendants are entitled to summary judgment as to such claims.

### 2.    Availability of a <u>Bivens</u> Remedy

Although the defendants acknowledge that Hood exhausted his administrative remedies with respect to the alleged use of force in March 2019, the defendants argue that such claims are nonetheless subject to dismissal because a <u>Bivens</u> remedy is not available in this context. For the following reasons, the court agrees.

At its core, Hood's complaint alleges that certain defendants violated his Eighth Amendment right to be free from cruel and unusual punishment by using excessive force upon his arrival at USP Lee or allowing excessive force to be used against him. Such conduct, if engaged in by state prison officials, could give rise to a cause of action under 42 U.S.C. § 1983. However, "§ 1983 does not provide a cause of action against <u>federal</u> officials, and there is no

analogous statute imposing damages liability on federal officials." Tun-Cos v. Perrotte, 922 F.3d 514, 520 (4th Cir. 2019).

In Bivens, "the Supreme Court broke new ground by holding that a person claiming to be the victim of an unlawful arrest and search could bring a Fourth Amendment claim for damages against the responsible agents even though no federal statute authorized such a claim." Hernandez v. Mesa, 140 S. Ct. 735, 741 (2020). Although the Court "acknowledged that the Fourth Amendment does not provide for money damages 'in so many words,'" the Court "held that it could authorize a remedy under general principles of federal jurisdiction." Ziglar, 137 S. Ct. at 1854 (quoting Bivens, 403 U.S. at 396).

In the decade following Bivens, the Supreme Court "recognized what has come to be called an implied cause of action in two cases involving other constitutional violations." Id. In Davis v. Passman, the Court held that the Due Process Clause of the Fifth Amendment provided a damages remedy for an administrative assistant who alleged that a Congressman fired her because she was a woman. 442 U.S. at 248–49. And in Carlson v. Green, the Court held that the Eighth Amendment provided a damages remedy for the estate of a prisoner who died due to the alleged failure of federal prison officials to treat the prisoner's asthma. 446 U.S. at 19. "These three cases—Bivens, Davis, and Carlson, represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself." Ziglar, 137 S. Ct. at 1855.

After those three cases were decided, the Supreme Court "changed course." Hernandez, 140 S. Ct. at 741. Over the past 42 years, the Court has repeatedly "declined . . . to imply a similar cause of action for other alleged constitutional violations." Egbert v. Boule,

142 S. Ct. 1799–1800 (2022) (collecting cases). "And in the last 5 years in particular, it has handed down a trilogy of opinions not only expressing regret over its Bivens cases but also demonstrating hostility to any expansion of them." Tate v. Harmon, 54 F.4th 839, 843 (4th Cir. 2022) (citing Ziglar, 137 S. Ct. at 1857; Hernandez, 140 S. Ct. at 742–43; Egbert, 142 S. Ct. at 1802). The Court has explained that it "came to appreciate more fully the tension between this practice and the Constitution's separation of legislative and judicial power." Hernandez, 140 S. Ct. at 741. More specifically, the Court came to recognize that "Congress is best positioned to evaluate 'whether, and the extent to which, monetary and other liabilities should be imposed upon individual officers and employees of the Federal Government' based on constitutional torts," id. at 742 (quoting Ziglar, 137 S. Ct. at 1856), and that "the Judiciary's authority to do so at all is, at best, uncertain," Egbert, 142 S. Ct. at 1803. "Given the notable change in the Court's approach to recognizing implied causes of action, . . . the Court has made clear that expanding the Bivens remedy is now a 'disfavored' judicial activity." Ziglar, 137 S. Ct. at 1857 (quoting Iqbal, 556 U.S. at 675); see also Egbert, 142 S. Ct. at 1803 ("When asked to imply a Bivens action, 'our watchword is caution.'") (quoting Hernandez, 140 S. Ct. at 742); Silva v. United States, 45 F.4th 1134, 1136 (10th Cir. 2022) ("The Supreme Court's message could not be clearer—lower courts expand Bivens claims at their own peril.").

The Supreme Court has directed lower courts to employ a two-step process in determining whether a Bivens remedy is available. First, the court must determine "whether the case presents 'a new Bivens context'—i.e., is it 'meaningful[ly]' different from the three cases in which the Court has implied a damages action." Egbert, 142 S. Ct. at 1803 (quoting Ziglar, 137 S. Ct. at 1859–60). "If the context is not new. . . then a Bivens remedy continues

to be available." <u>Tun-Cos</u>, 992 F.3d at 522–23. "But if the context is new, then courts must, before extending <u>Bivens</u> liability, evaluate whether there are 'special factors counselling hesitation in the absence of affirmative action by Congress.' If any such 'special factors' do exist, a <u>Bivens</u> action is not available." <u>Id.</u> at 523 (quoting <u>Ziglar</u>, 137 S. Ct. at 1857). "Put another way, the most important question is who should decide whether to provide for a damages remedy, Congress or the courts? If there is a rational reason to think that the answer is Congress—as will be in most every case—no <u>Bivens</u> action may lie." <u>Egbert</u>, 142 S. Ct. at 1803 (internal quotation marks and citations omitted).

The Fourth Circuit recently applied this two-step process in determining "whether an inmate has a cause of action under the Eighth Amendment for money damages against federal prison officials based on 'degenerate' conditions of confinement." <u>Tate</u>, 54 F.4th at 841. The plaintiff alleged that he was sent to USP Lee's Special Housing Unit as punishment for a false and retaliatory incident report and that the conditions in that unit "were so degrading and detrimental that they constituted cruel and unusual punishment, in violation of the Eighth Amendment." <u>Id.</u> at 842. For instance, the plaintiff alleged "that the temperatures in his cell could be extraordinarily cold; that he was given soiled and inadequate bedding; that he was provided undersized toilet paper and a virtually unusable toothbrush; that he was not provided adequate cleaning supplies; that prison guards made it difficult or impossible for him to use the one hour per day that he was supposed to be allowed outside his cell; and that prison guards intentionally endangered him by falsely telling other inmates that he had exposed himself and made sexual overtures to male prison guards." <u>Id.</u> Applying the two-step process described by the Supreme Court, the Fourth Circuit concluded that the plaintiff's Eighth

Amendment conditions-of-confinement claim was "different from any Supreme Court decision finding a <u>Bivens</u> cause of action" and that the relief sought by the inmate "should be provided by Congress, if at all." <u>Id.</u> at 841. The Court emphasized that its conclusion was "based on the broad nature of the inmate's claim and the separation-of-powers implications of recognizing a <u>Bivens</u> cause of action in the new context of his claim." <u>Id.</u> at 841–42.

### a.    New Context

Against this backdrop, the court proceeds to consider whether Hood's Eighth Amendment claims involve a "new context" for <u>Bivens</u> purposes. As the Fourth Circuit emphasized in <u>Tate</u>, "[t]he Supreme Court has instructed not only that 'new context' must be understood broadly but also that a new context may arise if <u>even one</u> distinguishing fact has a potential to implicate separation-of-powers considerations." <u>Id.</u> at 846 (emphasis in original) (citing <u>Egbert</u>, 142 S. Ct. at 1805). For instance, "[a] case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; . . . the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous <u>Bivens</u> cases did not consider." <u>Ziglar</u>, 137 S. Ct. at 1860. Thus, "a radical difference is not required." <u>Tun-Cos</u>, 922 F.3d at 523.

Applying these principles, the court concludes that Hood's Eighth Amendment claims related to the use of force present a new <u>Bivens</u> context. Although <u>Carlson</u> also involved a claim under the same amendment, the Supreme Court has made clear that "[a] claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." <u>Hernandez</u>, 140 S. Ct. at 743. As

previously noted, Carlson involved the alleged failure to provide medical treatment for an inmate's chronic asthma, which ultimately resulted in the inmate's death. Carlson, 446 U.S. at 16 n.1. Here, in contrast, Hood alleges that various defendants subjected him to cruel and unusual punishment in the form of beatings, torture, threats, and painful restraints, and that other defendants failed to intervene. Under the applicable standard, Hood's allegations are sufficiently different to constitute a new Bivens context. See, e.g., Greene v. United States, No. 21-5398, 2022 WL 13638916, at *4 (6th Cir. Sept. 13, 2022) (concluding that "Eighth amendment claims against federal corrections officers and officials for conspiracy, excessive force, sexual harassment, sexual assault, and failure to protect arise in 'a new context' and involve a 'new category of defendants,' and therefore are presumptively non-cognizable") (citations omitted); Silva, 45 F.4th at 1137 (noting that a federal inmate's claim of excessive force "clearly constitutes an expansion of Bivens"); Jean v. Smallwood, No. 7:20-cv-00415, 2022 WL 17969091, at *5 (W.D. Va. Dec. 27, 2022) (Dillon, J.) (explaining that "the court has no difficulty in concluding that [the plaintiff's] remaining claims—all of which are excessive force claims—arise in a new context, as the Supreme Court has never ruled that a damages remedy exist for claims of excessive force by BOP officers against an inmate"); see also cf. Tate, 54 F.4th at 847 (concluding that the inmate's conditions-of-confinement claim was not authorized by Carlson but instead arose in a new context).

### b.   Special Factors

Because Hood's Eighth Amendment claims arise in a new context, the court must determine whether there are any "special factors counselling hesitation" in recognizing a cause of action under Bivens. Ziglar, 137 S. Ct. at 1857. "If there is even a single 'reason to pause

before applying <u>Bivens</u> in a new context,' a court may not recognize a <u>Bivens</u> remedy." <u>Egbert</u>, 142 S. Ct. at 1803 (quoting <u>Hernandez</u>, 140 S. Ct. at 743). For the following reasons, the court concludes that several special factors counsel against allowing a <u>Bivens</u> remedy for Hood's claims.

First, alternative remedies exist for aggrieved parties in Hood's position. <u>See</u> <u>Ziglar</u>, 137 S. Ct. at 1864 (noting that "the existence of alternative remedies usually precludes a court from authorizing a <u>Bivens</u> remedy"). In <u>Correctional Services Corp. v. Malesko</u>, the Supreme Court "explained that <u>Bivens</u> relief was unavailable because federal prisoners could, among other options, file grievances through an 'Administrative Remedy Program.'" <u>Egbert</u>, 142 S. Ct. at 1806 (quoting <u>Malesko</u>, 534 U.S. at 74); <u>see also</u> <u>Malesko</u>, 534 U.S. at 74 (noting that federal inmates may also file "suits in federal court for injunctive relief"). "While these alternate remedies do not permit an award of money damages, they nonetheless offer the possibility of meaningful relief and therefore remain relevant to [the court's] analysis." <u>Earle v. Shreves</u>, 990 F.3d 774, 780 (4th Cir. 2021). As discussed above, Hood utilized the Administrative Remedy Program upon being transferred to USP Terre Haute, and his allegations of staff misconduct were referred to the appropriate authority for review. "[B]ecause <u>Bivens</u> 'is concerned solely with deterring the unconstitutional acts of individual officers,'" courts have found that "the availability of the BOP's Administrative Remedy Program offers an independently sufficient ground to foreclose a [federal inmate's] <u>Bivens</u> claim." <u>Silva</u>, 45 F.4th at 1141 (quoting <u>Egbert</u>, 142 S. Ct. at 1806); <u>see also</u> <u>Hower v. Damron</u>, No. 21-5996, 2022 WL 16578864, at *3 (6th Cir. Aug. 31, 2022) (concluding that the existence of alternative processes, including the BOP's grievance process, counseled against extending <u>Bivens</u> to the plaintiff's Eighth Amendment

claim); Springer v. United States, No. 21-11248, 2022 WL 2208516, *1 (5th Cir. June 21, 2022) (same). Additionally, the FTCA authorizes claims for damages against the United States for certain intentional torts committed by federal officers, including assault and battery. See Millbrook v. United States, 569 U.S. 50, 54–57 (2013). Although Hood did not properly exhaust his FTCA claims before he filed this civil action, the FTCA nonetheless provides an alternative process to redress the type of harm alleged in this case. See, e.g., Mejia v. Miller, 53 F.4th 501, 506–07 (9th Cir. 2022) (concluding that the existence of alternative remedies, including claims for damages under the FTCA, weighed against recognizing a Bivens cause of action for excessive force against an officer of the Bureau of Land Management); Oliva v. Nivar, 973 F.3d 438, 444 (5th Cir. 2020) (explaining that the possibility of relief under the FTCA counseled against extending Bivens to a claim of excessive force brought against police officers at a Veterans Affairs hospital, even though the FTCA would "not provide the exact same kind of relief Bivens would").

Second, "legislative action suggesting that Congress does not want a damages remedy" against federal prison officials counsels hesitation in recognizing a cause of action under Bivens. Ziglar, 137 S. Ct. at 1865. As the Supreme Court recognized in Ziglar, Congress enacted the PLRA approximately fifteen years after Carlson was decided, and the Act "made comprehensive changes to the way prisoner abuse claims must be brought in federal court." Id. Although "Congress had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs," it did not provide a damages remedy against federal prison officials. Id. This arguably "suggests Congress chose not to extend the Carlson damages remedy to cases involving other types of prisoner mistreatment." Id.; see also

Springer, 2022 WL 2208516, at *1 (concluding that the fact that Congress had not extended Carlson to other types of Eighth Amendment claims counseled against extending Bivens to the plaintiff's conditions-of- confinement claim).

Third, as in Tate, there is reason to believe that "[t]he political branches are   . . . 'better equipped to decide whether existing remedies should be augmented by the creation of a new judicial remedy.'" Tate, 54 F.4th at 828 (quoting Egbert, 142 S. Ct. at 1805). For instance, Hood's claims related to the use of restraints implicate serious questions relating to the manner and extent of prison discipline, and the Fourth Circuit has long recognized that "the maintenance of discipline in a prison is an executive function with which the judicial branch ordinarily does not interfere." Wetzel v. Edwards, 635 F.2d 283, 288 (4th Cir. 1980). Along the same lines, the Supreme Court has long acknowledged that "courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform" and that the management of prisons is "peculiarly within the province of the legislative and executive branches of government." Turner v. Safley, 482 U.S. 78, 84–85 (1987) (internal quotation marks and citation omitted). Thus, based on the nature of Hood's claims, separation-of-powers concerns further counsel hesitation in extending Bivens in this context.

The Supreme Court has made clear that "[i]f there is even a single 'reason to pause before applying Bivens in a new context,' a court may not recognize a Bivens remedy." Egbert, 142 S. Ct. at 1803 (quoting Hernandez, 140 S. Ct. at 743). Here, at least three special factors counsel hesitation. Therefore, consistent with other recent decisions, the court concludes that a Bivens remedy is unavailable for Hood's claims under the Eighth Amendment. See, e.g., Silva, 45 F.4th at 1141–42 (declining to extend Bivens to a federal inmate's Eighth Amendment

excessive force claim); <u>Greene</u>, 2022 WL 13638916, at *4 (concluding that a <u>Bivens</u> remedy was unavailable for a federal inmate's claims of excessive force, sexual harassment, sexual assault, and failure to protect); <u>Hower</u>, 2022 WL 16578864, at *4 (declining to extend <u>Bivens</u> to a federal inmate's Eighth Amendment claims involving alleged harassment and threats by officers and the warden's alleged failure to protect him from the same); <u>Jean</u>, 2022 WL 17969091, at *7 (concluding that a BOP inmate's excessive force claims were not cognizable under <u>Bivens</u>); <u>Bone v. Ebbert</u>, No. 3:19-cv-0112, 2022 WL 943036, at *9 (M.D. Pa. Mar. 29, 2022) (joining "the many others that have concluded . . . that extending <u>Bivens</u> to [an] Eighth Amendment excessive confinement in restraints claim would be contrary to law") (footnote omitted). Accordingly, the claims for which Hood exhausted his administrative remedies are nonetheless subject to dismissal. While this result may seem harsh and unjust given the appalling nature of the facts alleged, it is the result compelled by existing precedent. And as another judge recently explained in reaching the same decision, "this court is obligated to faithfully apply binding precedent, such as <u>Egbert</u>, in the cases before it, no matter how egregious the allegations of abuse are." <u>Jean</u>, 2022 WL 17969091, at *7.

For these reasons, the court will grant the defendants' motions to dismiss and/or for summary judgment.[4]

## II.    Hood's Motion to Amend

The court turns now to Hood's motion to amend. As indicated above, Hood seeks to add claims against the BOP. He also seeks to add claims against USP officials who allegedly

---

[4] In light of the court's conclusions on the issues of exhaustion and the availability of relief under <u>Bivens</u>, the court finds it unnecessary to address the additional arguments raised by the defendants.

failed to protect him from abuse, ignored complaints related to prison conditions, and prevented him from filing grievances. For the following reasons, the motion will be denied as futile.

First, a <u>Bivens</u> clam cannot be brought against a federal agency. See <u>FDIC v. Meyer</u>, 510 U.S. 471, 486 (1994). Consequently, the BOP is "not a proper defendant in a <u>Bivens</u> action." <u>Pinson v. Unknown Party</u>, 698 F. App'x 445, 446 (9th Cir. 2017).

Second, to the extent Hood seeks to add claims under the FTCA, he has not shown that he satisfied the procedural requirements necessary for the court to exercise jurisdiction over such claims. See <u>Kokotis</u>, 223 F.3d at 278 ("[T]he requirement of filing an administrative claim is jurisdictional and may not be waived."); <u>see also</u> <u>Welch v. United States</u>, 409 F.3d 646, 650–651 (4th Cir. 2005) (explaining that the burden of establishing jurisdiction over an FTCA claim lies with the plaintiff).

Third, for the same reasons set forth above, a <u>Bivens</u> remedy is not available for Hood's particular claims under the Eighth Amendment. Thus, amending those claims to include additional allegations or defendants would be futile.

Finally, to the extent Hood alleges that SIS Sexton or any other prison official prevented him from filing grievances, the Fourth Circuit has held that "inmates have no constitutional entitlement or due process interest in access to a grievance procedure." <u>Booker v. S.C. Dep't of Corr.</u>, 855 F.3d 533, 541 (4th Cir. 2017) (citing <u>Adams v. Rice</u>, 40 F.3d 72 (4th Cir. 1994)). Likewise, "[a] failure to properly investigate a grievance, even if it were shown to violate some prison procedure or rule, does not give rise to a constitutional claim." <u>Stevens v.</u>

Clarke, No. 7:21-cv-00570, 2022 WL 2757637, at *5 (W.D. Va. July 14, 2022). Therefore, amending the complaint to include such claims would be futile.

## CONCLUSION

For the reasons stated, the defendants' motions to dismiss and/or for summary judgment, ECF Nos. 26, 33, and 99, are **GRANTED**, and Hood's motion to amend, ECF No. 43, is **DENIED**. An appropriate order will be entered.

Entered: January 20, 2023

Digitally signed by Michael
F. Urbanski      Chief U.S.
District Judge
Date: 2023.01.20 16:57:36
-05'00'

Michael F. Urbanski
Chief United States District Judge